UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SYED A.,                                          :
                                                  :
                                   Plaintiff,     :            **25 Civ. 2051 (GS)**
                                                  :
                                                  :         **OPINION AND ORDER**
                    - against -                    :
                                                  :
COMMISSIONER OF SOCIAL SECURITY,  :
                                                  :
                                   Defendant.     :
-----------------------------------------------------------------x

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Syed A. ("Syed" or "Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of a final determination of the Commissioner of Social Security (the "Commissioner") denying his claims for social security disability benefits and supplemental security income benefits.  Plaintiff moves for judgment on the pleadings pursuant to Fed R. Civ. P. 12(c).  (Dkt. No. 13).  For the reasons set forth below, Plaintiff's motion is **DENIED** and the Commissioner's determination is **AFFIRMED.**

BACKGROUND

**A. Procedural History**

On November 8, 2022, Syed filed applications for Social Security Disability ("SSD") benefits under Title II of the Social Security Act and for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, and alleged a disability onset date of October 20, 2022.  (Dkt. No. 10, Administrative Record ("AR") 199-218).  The Social Security Administration ("SSA") initially denied Syed's applications on March 30, 2023 (AR 84-94), and again after reconsideration

1

on October 19, 2023 (AR 104-19).  Syed requested a hearing before an

Administrative Law Judge ("ALJ") on November 6, 2023.  (AR 120-21).

A hearing was conducted before ALJ Kimberly D. Schulz on May 23, 2024.

(AR 31-51).  In a decision issued on June 11, 2024 (the "ALJ Decision"), ALJ Schulz

found that Syed was not disabled within the meaning of the Social Security Act and

thus denied both of his applications for benefits.  (AR 14-30).  On January 15, 2025,

the Appeals Council denied Syed's request for review of the ALJ Decision, which

thus became the Commissioner's final decision.  (AR 1-6).

Syed filed his Complaint, seeking review of the ALJ Decision, on March 12,

2025.  (Dkt. No. 1).  Syed moved for judgment on the pleadings on August 14, 2025.

(Dkt. No. 13, 14 ("Pl. Br.") (memorandum of law)).  The Commissioner filed a brief

on September 24, 2025 opposing Syed's motion and requesting that the

Commissioner's final decision be affirmed.  (Dkt. No. 15 ("Gov. Br.")).

## B. Administrative Record

Syed was 52 years old when he applied for SSD and SSI benefits in 2022.

(AR 201).  He studied up to fifth grade in Bangladesh, with no further education in

the United States.  (AR 38).  His only prior relevant work experience is as a cook's

helper.  (AR 45).  He last worked in April 2020 when the COVID-19 pandemic

began.  (AR 202).

Although Syed claimed disability based on several conditions (*see* AR 52, 62),

the ALJ found his only severe impairments to be diabetes mellitus and multilevel

spondylosis; his other claimed impairments, the ALJ found, are non-severe and do

not limit his ability to perform work activities. (AR 19-20 (finding that Syed's H Pylori infection, retinopathy, kidney disease, lung impairment, and hyperlipidemia are non-severe impairments)). Syed does not challenge those findings and hence this opinion focuses on Syed's severe impairments.

Syed has an extensive record of treatment for Type 2 diabetes mellitus with hypo and hyperglycemia. He was originally diagnosed with diabetes in 2004. (AR 1828). On January 8, 2020, a physician noted that Syed had "[u]ncontrolled type 2 diabetes mellitus with both eyes affected by mild nonproliferative retinopathy without macular edema, with long-term current use of insulin." (AR 641). At that time, he was prescribed, *inter alia*, 18 units of insulin glargine nightly. (AR 642). Notes from a primary care visit on March 24, 2022 indicate that his diabetes remained uncontrolled despite an increase in his insulin dosage to 55 units nightly. (AR 745-46). Notes from a May 6, 2022 visit indicate that his condition persisted. (AR 721-22).

On August 6, 2022, Syed was hospitalized at Bronx Lebanon Hospital for low blood sugar and altered mental state, charted as requiring "immediate life-saving intervention." (AR 365-66). During his hospitalization, Syed tested positive for COVID-19, and a physician noted this as a potential cause of an acute kidney injury leading to low blood sugar. (AR 378-79). At that time, Syed was taking insulin, metformin, and alogliptin for his diabetes. (AR 418). After a six-day stay, he was stabilized and discharged on August 12, 2022. (AR. 566). His use of insulin and alogliptin was discontinued, though he continued to take metformin. (AR 890, 758).

3

His family suggested that this was his first episode of hypoglycemia. (AR 1405). Syed did not express any complaints at the time of his discharge. (AR 643).

On August 31, 2022, Syed had an initial evaluation with Metropolitan Hospital's endocrinology department. (AR 1401-22). A week before, testing indicated abnormally high glucose and creatinine levels. (AR 712). Syed reported symptoms of numbness/pain/tingling sensations in his hands or feet, had experienced high fasting glucose levels in the 300s following his discharge from Bronx Lebanon Hospital, and presented with a glucose level of 412 during his visit. (AR 1405-06). His diabetes mellitus was assessed as "poorly controlled"; he was re-prescribed insulin (at a dosage of 12 units), and his dosage of alogliptin was increased. (AR 772, 1411). On September 23, 2022, his insulin dosage was further increased to 13-15 units. (AR 779).

An October 11, 2022 evaluation noted that Syed's diabetes mellitus remained "uncontrolled" despite insulin use, and his dosage was increased to 20 units. (AR 1825-7, 1829). In tests on that date and on October 20, 2022, Syed continued to present elevated glucose levels. (AR 809-10). On October 25, 2022, Syed's primary care provider prescribed him Farxiga, but he did not begin using it because it was denied by his health insurance. (AR 766). Syed's diabetes was assessed as "uncontrolled" during November 15, 2022 and October 10, 2023 evaluations, despite adjustments to his medications, insulin included. (AR 796-99, 2019-20). By contrast, notes from October 17, 2023 and November 14, 2023 evaluations refer to Syed's diabetes as "controlled." (AR 1995, 1967).

At a January 24, 2023 endocrinologist visit, Syed reported no acute complaints and indicated that he was feeling well.  (AR 891).  At a February 8, 2023 primary care visit, he reported occasional dizziness and palpitations.  (AR 937).  At a February 21, 2023 visit, he denied having numbness/tingling/burning sensations in his feet.  (AR 917).

The SSA's Disability Determination Explanation supporting its initial denial of Syed's application in March 2023 included a medical evaluation from a non-examining state agency consultant, Dr. A. Saeed.  (AR 52-55).  Dr. Saeed concluded, based on his review of the medical record, that none of Syed's claimed impairments, including his diabetes, was severe.  (AR 54).  The evaluation also noted the absence of any "medical opinion from any medical source."  (*Id.*).

Syed, now represented by counsel, moved for reconsideration.  (AR 76-83).  This resulted in another Disability Determination Explanation, dated October 17, 2023.  (AR 62-67).  In that evaluation, another non-examining state agency consultant, Dr. A. Vinluan, again found Syed's physical impairments to be non-severe and noted the absence of any medical opinion from any medical source.  (AR 65-66).  The evaluation also noted that examinations with SSA doctors "were scheduled on 6/27/23 and 7/26/23" but that Syed "failed to attend the exams."  (AR 64).  Although the agency reached out to Syed's attorney to find out why Syed missed the exams, no response was received.  (*Id.*).

During a visit to one of his treating physicians, Dr. Natalie Mickhael, on January 25, 2024, Syed's diabetes was characterized as uncontrolled, but the notes

also state that he reported "feeling well" and denied "any acute pain or discomfort." (AR 1875-76). Syed requested the continued assistance of a home health aide ("HHA"), stating that he needed help remembering to take his medications, injecting himself with insulin, and clothing himself when his wife was unavailable to assist him. (AR 1875). Dr. Mickhael told him that a home nurse could be justified for assistance with his medications, but not an HHA, noting that it was "unclear what medical necessity there [was]," given that Syed was "fully functional and mobile without assistance." (*Id.*; *see* Gov. Br. at 2).

On February 15, 2024, Syed, a former smoker, received a CT scan for lung screening purposes. Although that test did not result in a respiratory diagnosis, it revealed that Syed suffered from multilevel spondylosis, a degenerative condition of the spine sometimes associated with diabetes. (AR 1855).

### C. Hearing

At the May 23, 2024 hearing before ALJ Schulz, Syed confirmed that he had not worked since filing for disability. (AR 38). While conceding that he was only admitted to the hospital on one occasion, he testified that he stopped working because his dysregulated blood sugar would result in his not being able to balance and because he also had an issue with his lung. (AR 39-40). Syed testified that when his blood sugar went too high he would be unable to stand, his head would start spinning, and he would need to sit down for a few minutes; when his blood sugar went too low, he would start shaking, become confused and unable to lift anything, and need to sit down. (AR 40-42). Syed testified that he had trouble

breathing on account of his lung condition, triggered by walking fast or climbing stairs, but that he was not prescribed any medication for this breathing difficulty pending results from tests taken "a few days ago." (AR 43).

At the hearing, a vocational expert, Shondra Gathings, testified that someone with Syed's residual functional capacity ("RFC"), as reflected in the ALJ's hypothetical, could not perform his past work as a cook's helper. (AR 46). That being said, she also testified that there are jobs in the national economy that someone in Syed's position could perform, including merchandise marker, routing clerk or mailroom clerk. (AR 46). Gathings stated, however, that no such jobs for Syed would exist were he to be off task 15% of the time or were he to take more than one day a month of unscheduled absences. (AR 47-48). Gathings stated further that if someone in Syed's position were unwell five days a month and unable to perform more than two hours of work or lift more than 10 pounds, they would be deemed sedentary. (AR 48).

Syed's counsel did not present any medical opinion testimony prior to or at the hearing, and stated, in response to the ALJ's question, that he "consider[ed] the record complete." (AR 36).

### D. ALJ Decision

In her June 11, 2024 decision, ALJ Schulz found that Syed's diabetes mellitus and multilevel spondylosis qualified as severe impairments, rejecting the non-examining reviewers' opinions that Syed had no severe impairments. (AR 19, 23). Nonetheless, the ALJ also found that none of Syed's impairments meet or medically

equal the listed impairments under 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 or 416.926.  (AR 20-21).  The ALJ concluded that Syed retained RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), that he can stand and/or walk 6 hours and sit 6 hours during an 8-hour workday, with normal breaks, with the exceptions that he can lift and/or carry 20 pounds occasionally and/or 10 pounds frequently, and he cannot climb ladders, ropes, or scaffolds, or be exposed to moving mechanical parts or unprotected heights.  (AR 21).

In making the finding of RFC suitable to perform light work, the ALJ found that Syed's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Syed's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 22).  Specifically, the ALJ found Syed's statements unreliable because "treatment notes and objective evidence" show that his physical limitations "would not prevent [Syed] from performing all work."  (*Id.*).  She then reviewed specific treatment notes and other documentary evidence in the record in support of this conclusion.  (*Id.*).

Citing the vocational expert's testimony, the ALJ then found that, while Syed was unable to perform his past relevant work (as a cook's helper), "there are jobs that exist in significant numbers in the national economy that the claimant can perform"—specifically, the occupations identified by the vocational expert (merchandise marker, routing clerk, and mailroom clerk).  (AR 23-24).  The ALJ

therefore concluded that Syed is not disabled under sections 216(i) and 223(d) of the Social Security Act, rejecting Syed's applications for SSD and SSI benefits on this basis.  (AR 24-25).

## LEGAL STANDARDS

### A.  Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides."  42 U.S.C. § 405(g).  The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (cleaned up).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review."  *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (cleaned up).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'"

*Conklin v. Kijakazi*, No. 21 Civ. 8486 (JLC), 2023 WL 104829, at *7 (S.D.N.Y. Jan. 5, 2023) (quoting *Brault*, 683 F.3d at 448).

In weighing whether substantial evidence supports the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (citation omitted).  Based on this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing."  42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence."  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).

## B. Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357-59 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience,

10

engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

"The Social Security Administration has outlined a five-step, sequential evaluation process to determine whether a claimant is disabled."  *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (cleaned up); *see* 20 C.F.R. § 404.1520(a)(4). The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step.  *Manzanares v. Comm'r of Soc. Sec.*, No. 22 Civ. 1898 (SN), 2023 WL 4350651, at *4 (S.D.N.Y. July 5, 2023).  The Second Circuit has described the five-step process as follows:

> *First*, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner *next* considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the *third* inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the *fourth* inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work. *Finally*, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (emphasis added); *see* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

11

The claimant bears the burden of proof as to steps one through four; the Commissioner bears the burden as to step five.  *See Manzanares*, 2023 WL 4350651, at \*4 (citing *Selian*, 708 F.3d at 418).

### C.  The ALJ's Duty to Develop the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02 Civ. 5782 (FB), 2003 WL 22709204, at \*3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.").  "[This duty] exists even when, as here, the claimant is represented by counsel.  This duty exists where there are obvious gaps in the administrative record." *De Camacho v. O'Malley*, 717 F. Supp. 3d 354, 367 (S.D.N.Y. 2024) (cleaned up).  "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history." *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999).

However, the ALJ's duty to develop the record, while "'robust,'" is "'not unlimited.'"  *Angela Lynn H. v. Comm'r of Soc. Sec.*, No. 24 Civ. 4107 (GRJ), 2025 WL 1369400, at \*4 (S.D.N.Y. May 9, 2025) (quoting *Clarke v. Comm'r of Soc. Sec.*, No. 19 Civ. 7213 (BCM), 2021 WL 2481909, at \*13 (S.D.N.Y. June 16, 2021)).  "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v.*

*Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (citation omitted).  Further, counsel for a claimant also has affirmative duties to obtain and submit evidence at each level of the administrative review process.  *Melissa I. o/b/o R.J.R.D. v. Comm'r of Soc. Sec.*, No. 20 Civ. 1799 (WBC), 2022 WL 3358138, at *3-4 (W.D.N.Y. Aug. 15, 2022) (citing SSR 17-4p, 2017 WL 4736894 at *4; 20 CFR § 416.1540(b)).

## D.  Evaluation of Claimant's Testimony

Social Security regulations require a two-step process for evaluating a claimant's subjective statements about the intensity, persistence, and limiting effects of his or her symptoms.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)).  "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010).

Where "findings are supported by substantial evidence, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints[.]'"  *Them v. Colvin*, No. 14 Civ. 7580 (PKC), 2015 WL 10635499, at *9 (S.D.N.Y. Dec. 22, 2015) (quoting *Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984)); *see also Vargas v. Astrue*, No. 10 Civ. 6306 (PKC), 2011 WL 2946371, at *15 (S.D.N.Y. July 20, 2011) ("An ALJ may properly make such a

credibility decision if her decision, after reviewing the medical findings and other evidence in the record, is supported by substantial evidence."). "'[C]redibility findings of an ALJ are entitled to great deference' and are reversible only if they are 'patently unreasonable.'" *Torres v. Comm'r of Soc. Sec.*, No. 22-CV-00003-MJP, 2024 WL 5090815, at *4 (W.D.N.Y. Dec. 12, 2024) (citation omitted).

"In assessing a claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 277 (S.D.N.Y. 2009) (citing *Lugo v. Apfel,* 20 F. Supp. 2d 662, 663 (S.D.N.Y. Sept. 28, 1998)). "A finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)). "Where the ALJ fails sufficiently to explain a finding that the claimant's testimony was not entirely credible, remand is appropriate." *Valet v. Astrue*, No. 10 Civ. 3282 (KAM), 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (citing *Tornatore v. Barnhart*, No. 05 Civ. 6858 (GEL), 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006)).

## DISCUSSION

Syed argues that the ALJ erred in (1) failing to adequately develop the medical record (Pl. Br. at 4-6); and (2) discounting Syed's testimony regarding his own symptomology without substantial evidence (*id.* at 7-10). The Court considers each argument in turn.

14

### A. The ALJ Properly Developed the Record

Syed asserts that the medical record upon which the ALJ relied lacks any opinion from a medical professional examining Syed's RFC capacity or ability to perform work. (Pl. Br. at 4). Syed points out that the only medical opinions in the record are from two non-examining state agency medical consultants, Drs. Saeed and Vinluan, and these opinions were rejected by the ALJ as unpersuasive. (*Id.*). The ALJ, according to Syed, "should have requested an opinion from the treating doctor or at least a consultative examination." (*Id.* at 5).

The Commissioner contends that the ALJ properly developed the record and was under no obligation to obtain a medical opinion. (Gov. Br. at 7-11). Rather, according to the Commissioner, the ALJ was entitled to rely on treatment notes and Syed's reports of his activities of daily living in determining Syed's RFC, and this evidence sufficiently supports the ALJ's RFC finding. (*Id.* at 9-10).

Social Security Ruling ("SSR") 96-8p requires the ALJ to provide a discussion of evidence supporting an RFC. "Although '[n]othing in the regulation indicates that an ALJ's ultimate determination . . . of RFC must comport with a specific medical opinion,' the lack of a medical opinion that supports the ALJ's conclusion is 'not insignificant.'" *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 71-72 (2d Cir. 2025) (quoting *Rubin v. Comm'r of Soc. Sec.*, 116 F.4th 145, 155-56 (2d Cir. 2024)). "While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a

15

medical source.'" *Muhammad v. Colvin*, No. 6:16-CV-06369 (MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (citation omitted).

Still, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"). Thus, "[w]here . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (cleaned up).

The medical record in this case is unusual, as Syed points out, in that there is no medical opinion, from any source, regarding Syed's ability to work. (Pl. Br. at 4). The opinions from the non-examining state agency doctors, having found Syed's impairments to be non-severe, did not address his RFC. (*See* AR 54, 66). And there is no medical opinion from any of Syed's treating physicians or any other examining physician.

However, the absence of such an opinion is largely a function of Syed's own failure to obtain or submit one. Syed had multiple opportunities to submit an opinion from his treating physician: during the agency's initial disability determination, as part of his motion for reconsideration (by which point he was represented by counsel), in connection with the ALJ hearing, and when seeking

16

review from the Appeals Council.  (*See* Gov. Br. at 8).  He never did so.  In fact, nothing in the record suggests that Syed sought any consultation for purposes of securing a relevant medical opinion.  *See Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) ("Although [claimant] argues that the ALJ should have obtained a medical opinion . . . from one of [his] providers, [claimant] does not explain why neither he nor his counsel requested such an opinion.").

What's more, the SSA attempted to arrange a consultative examination of Syed.  As noted above, the October 17, 2023 Disability Determination Explanation states that examinations with state doctors were scheduled for June 27 and July 26, 2023, and that both times Syed failed to attend.  (AR 72).  Multiple attempts were made to contact Syed's counsel to inquire as to why Syed did not attend, but Syed's counsel failed to respond.  (*Id.*).

Treatment notes from office visits indicate that Syed may have been out of the country during the time of the scheduled examinations in June and July 2023 and that this may explain why he did not show up.  (*See* AR 1026 (April 25, 2023 note stating "Patient traveling to Bangladesh from mid May to mid August 2023"); AR 2033 (September 5, 2023 note stating that Syed missed his follow up "because he was out of the country")).  However, there would have been ample time for Syed to reschedule an examination prior to the October 17, 2023 disability determination and prior to the May 23, 2024 ALJ hearing.  The record reflects no effort by Syed or his counsel to attempt to reschedule the examination.  To the contrary, when asked

17

at the May 2024 hearing if he considered the record to be complete, Syed's counsel said that he did.  (AR 36).[1]

Normally, a claimant's unexplained failure to attend a scheduled consultative examination is fatal to a duty-to-develop claim.  "Courts in this Circuit have held that where a claimant fails to appear at a scheduled consultative examination without explanation, the ALJ has no further duty to develop the record."  *Perrelli v. Comm'r of Soc. Sec.*, No. 18 Civ. 04370 (KAM), 2020 WL 2836786, at \*5 (E.D.N.Y. June 1, 2020).  "[W]here claimants have refused to acknowledge, attend, or cooperate at scheduled consultative examinations or have failed to argue that they had good reasons for not attending such examinations, courts have rejected claims that the ALJ failed to develop the record."  *Matta v. Colvin*, No. 13 Civ. 5290 (CM) (JCM) 2016 WL 524652, at \*10 (S.D.N.Y. Feb. 8, 2016); *see also Richard R. v. Comm'r of Soc. Sec.*, No. 6:23–CV–6346 (LJV), 2024 WL 4064084, at \*5 (W.D.N.Y. Sept. 5, 2024) (rejecting plaintiff's claim that the ALJ failed to develop the record where plaintiff "missed his scheduled consultative exam" and "his attorney had plenty of time to reschedule that exam," yet did not raise the issue at the ALJ hearing or at any time prior to the federal court action).

Even assuming that Syed's being out of the country at the time of the scheduled examinations represents an extenuating circumstance, the ALJ did not

---

[1] To be sure, this representation, in and of itself, did not extinguish the ALJ's independent duty to develop the record if there was an obvious gap in the record that precluded her from making a reliable RFC determination.  *See Weiss v. Comm'r of Soc. Sec.*, No. 19 Civ. 5916 (MKB), 2021 WL 2010503, at \*14 n.8 (E.D.N.Y. Mar. 23, 2021) (collecting cases rejecting the Commissioner's argument that "a plaintiff's representation that the record is complete foreclose[s] duty-to-develop arguments on appeal").

violate her duty to develop the record.  Contrary to Syed's argument (*see* Pl. Br. at 6), the ALJ did have before her, and cited to, specific medical facts supporting her RFC determination.  In particular, the ALJ relied on the January 25, 2024 statement from Dr. Mickhael, one of Syed's treating physicians, that there was no "medical necessity" for a HHA given her evaluation of Syed as "fully functional and mobile without assistance."  (AR 1875; *see* AR 22).  Other medical evidence cited by the ALJ included the absence of any treatment for Plaintiff's multilevel spondylosis (AR 1855), the circumstances of Plaintiff's prior hospitalization (AR 418-19) and his discharge on only metformin (AR 890), his denial of complaints (AR 643, 891), his denial of numbness/tingling/burning in his feet (AR 917), and the description of his diabetes as "controlled" at subsequent post-hospitalization checkups (AR 1995, 1967).  (*See* AR 22).

Further, this is not a case where the ALJ rejected the claimant's medical opinion evidence without having any medical opinion supporting the ALJ's finding. "[I]t is the claimant's burden to prove a more restrictive RFC," *Snyder v. Comm'r of Soc. Sec.*, No. 22-277-cv, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023), and Syed failed to submit any medical opinion evidence, even from his own treating physicians.  The ALJ had ample justification for believing that the reason Syed chose to stand on the record as it existed at the time of the hearing without submitting an opinion from a treating physician, or attempting to reschedule a consultative examination with the SSA, was that such an opinion would not have supported Syed's disability claim.  *See Richard R.*, 2024 WL 4064084, at *5

(rejecting duty-to-develop argument where claimant's attorney "knew very well that there was no consultative medical examination and no medical opinion in the record, but [] did not raise that issue with the ALJ,"; "counsel cannot let an issue like that pass, see what the result of the hearing is, and then raise the issue when the decision turns out to be adverse").

The cases cited by Syed, where a remand was deemed necessary because no medical opinion supported an ALJ's RFC finding, are distinguishable. (*See* Pl. Br. at 6). In those cases, there was medical opinion evidence in the record as to the claimant's RFC, which the ALJ rejected. That is not the case here. *See Figueroa v. Comm'r of Soc. Sec.*, No. 20 Civ. 2700 (KAM), 2021 WL 4295513, at *10 (E.D.N.Y. Sept. 21, 2021) (ALJ "rejected the opinions of both" the consultative examiner and claimant's treating physician that he could not perform sedentary work); *Rivera v. Comm'r of Soc. Sec.*, No. 15 Civ. 8439 (GBD) (HBP), 2017 WL 120974, at *4, *13 & n.16 (S.D.N.Y. Jan. 12, 2017) (ALJ declined to give much weight to consultative examiner who was "the only doctor to make findings on plaintiff's functional limitations in the record"; in addition, claimant submitted medical opinion after ALJ decision contradicting ALJ's RFC finding).

In sum, there was enough evidence in the record here for the ALJ to make an RFC assessment without taking steps to include a medical opinion that Syed himself had on numerous occasions chosen to forgo. The ALJ satisfied her duty to develop the record, while Syed and his counsel did not, and so Plaintiff's request for remand on this basis must be denied.

20

**B. The ALJ Properly Evaluated Syed's Subjective Statements**

Syed argues that the ALJ's evaluation of his subjective statements is not supported by substantial evidence. (Pl. Br. at 8-9). The Commissioner argues that the ALJ's evaluation of Syed's subjective statements was consistent with the evidence in the record. (Gov. Br. at 11-14).

At the hearing, Syed testified that when his blood sugar becomes dysregulated, he has difficulty going up stairs, standing for more than a few minutes, and maintaining balance, and that he becomes disoriented and suffers vision problems. (AR 40-42). On an SSA Function Report, Syed reported that he had difficulty with lifting, squatting, standing, reaching, walking, kneeling, and stair climbing. (AR 265). The ALJ found that Syed's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . which show[s] significant physical limitations that would not prevent [Syed] from performing all work." (AR 22).

The ALJ Decision considered specific medical records and other objective evidence which the ALJ interpreted as suggesting less debilitating symptoms than Syed attested to. The Commissioner notes (as summarized above) that the ALJ considered, *inter alia*, the fact that, while the February 2024 CT scan indicated that Syed suffered from multilevel spondylosis, there is no indication in the record that he was subsequently treated for this condition; Syed's denial of any numbness/tingling/burning in his feet, lack of acute complaints, and/or

21

categorization of his diabetes as controlled across multiple medical evaluations (*see* AR 643 (November 29, 2022), 891 (January 24, 2023), 2032-35 (September 5, 2023), 1995 (October 17, 2023), 965 (February 21, 2024)); the fact that Syed was not hospitalized again for his diabetes after his August 6, 2022 hospitalization; the fact that Syed was discharged on only metformin (*see* AR 890); the denial of Syed's request for an HHA on the basis of his physician's assessment of his capacity to move and function independently (*see* AR 1875); his exhibiting a normal range of motion and other normal physical and neurological traits during that visit (AR 1879); and (while not explicitly cited by the ALJ) a Metropolitan Hospital progress note, dated September 23, 2022, which stated that Syed independently managed his activities of daily living (*see* AR 781).[2]  (Gov. Br. 12-13; *see* AR 22).

Syed generally argues that none of the ALJ's citations to the record are conclusive and that the ALJ mischaracterized the record to make his conditions seem less debilitating.  (*See* Pl. Br. at 8-10).  Syed also points to countervailing evidence, such as the fact that there were periods of time when his diabetes was characterized as uncontrolled interspersed with periods when it was characterized as controlled.  (*Id.* at 9 (citing AR 798 (November 15, 2022), 2019 (October 10, 2023), 1875 (January 25, 2024)).

---

[2] The Commissioner also asserts that "Plaintiff reported that he used public transportation, walked, managed his finances, socialized, and attended church."  (Gov. Br. 13 (citing AR 263-64)).  Syed's Function Report, explains, however, that he uses public transportation and socializes, but needs assistance in these activities, that he can only walk for five minutes at a time, and that he "just stay(s) home" since his illness began.  (AR 263-64). Thus, the Function Report does not support the ALJ's assessment to the extent that the Commissioner suggests.

The fact that, taken in isolation, each piece of evidence cited by the ALJ might fail to satisfy the substantial evidence standard is not probative in light of the fact that the record must be considered as a whole. *See Selian*, 708 F.3d at 417. The record as a whole suggests that Syed's symptoms varied in intensity over the relevant period. The ALJ was obligated to consider both the evidence favorable to Syed's claim as well as the evidence unfavorable to it. But the ALJ stated that she had carefully considered all the evidence (AR 18, 22), noted claimant's own description of his symptomology (AR 22) and that he had been diagnosed with uncontrolled diabetes (AR 20), and cited to specific portions of the record upon which Syed relies (*e.g.*, the November 2022 and January 2024 doctor visits, *see* AR 22), reflecting that she had considered that evidence. *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 650 (W.D.N.Y. 2020) (holding that the ALJ properly acknowledged the claimant's reports that symptoms "crop up at times," but assessed the entirety of the record to conclude that the claimant's medications were generally effective at controlling her symptoms).[3]

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence. Thus, if the reviewing court finds substantial evidence to support the Commissioner's final decision, that

---

[3] Syed suggests that the ALJ erroneously stated that in October 2023, his diabetes was "controlled," when in fact it remained "uncontrolled." (Pl. Br. at 9). In fact, as the ALJ accurately noted, notes from Syed's October 17, 2023 visit describe his diabetes as "controlled." (AR 1995; *see also* AR 1998-99 (same)). While the notes from a visit the prior week, on October 10, 2023, describe Syed's diabetes at one point as "uncontrolled" (AR 2019), several other pages from the same visit describe his diabetes as "controlled" (AR 2021-24).

decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Klemons v. Kijakazi*, 626 F. Supp. 3d 620, 625 (S.D.N.Y. 2022) (cleaned up). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *see also Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (same); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").

Ultimately, an "ALJ ha[s] significant discretion to discount . . . Plaintiff's [subjective statements] in light of . . . other objective evidence." *Garcia v. Astrue*, No. 07 Civ. 6658 (DAB), 2009 WL 212405, at *7 (S.D.N.Y. Jan. 29, 2009); *see Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("As a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence." (cleaned up)). In this case, the ALJ's assessment of Syed's testimony was not "patently unreasonable" and so it is "entitled to deference." *Williams v. Colvin*, No. 14 Civ. 9134 (KNF), 2015 WL 8481841, *17 (S.D.N.Y. Oct. 27, 2015) (cleaned up).

Of course, an ALJ cannot cherry-pick evidence. *See Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 252 (E.D.N.Y, 2020) (finding ALJ's choice "to disregard [plaintiff's] statements in favor of a handful of anecdotes that would seem to indicate Plaintiff's normal functionality" was error). The ALJ Decision certainly

24

focuses primarily on medical evidence which undercuts Syed's testimony about his symptomology.  But the ALJ Decision also clearly demonstrates that the ALJ considered the case record as a whole, including objective medical evidence, in assessing those statements, as required by SSR 16-3p, contrary to Syed's arguments (*see* Pl. Br. at 7).  "[A]n ALJ is not required to discuss all the evidence submitted, and her failure to cite specific evidence does not indicate that it was not considered." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citation omitted)

Rather, pursuant to SSR 96–7p, an ALJ's explanation of their determination of the credibility of a claimant's subjective statements "must be *sufficiently* specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Burden v. Astrue*, No. CIV. 3:07CV0642 JCH, 2008 WL 5083138, at *14 (D. Conn. Aug. 26, 2008) (quoting SSR 96–7p) (emphasis added), *R&R adopted*, 588 F. Supp. 2d 269 (D. Conn. 2008).  The ALJ may reject a claimant's subjective statements when he or she has stated his or her reasons for rejecting these statements with "sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence," and so to "decide whether there are legitimate reasons for the ALJ's disbelief." *Ritter v. Astrue*, 32 F. Supp. 3d 193, 206-07 (N.D.N.Y. 2012) (cleaned up).

Here, while the ALJ does not point to specific inconsistencies between the case record and Syed's testimony, she does cite extensively to specific medical notes

25

and records.  (AR 22).  The ALJ's citations to the record have enabled the Court to determine that there is substantial evidence.  The ALJ Decision provides sufficient specificity, and so Syed's request for remand on this basis must also be denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (is **DENIED** and the Commissioner's determination is **AFFIRMED**.

The Clerk of Court is respectfully directed to close the pending motion at Docket Number 13.

**SO ORDERED.**

DATED:    New York, New York
          March 31, 2026

_____
GARY STEIN
United States Magistrate Judge

26